FILED IN OPEN COURT
U.S.D.C. - Atlanta

DEC 19 2025

KEVIN P. WEIMER, Clerk
By: _____ Deputy Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>*v.*<br><br>TRACY DENISE JONES | Criminal Information<br><br>No. 1:25-CR-559 |

THE UNITED STATES ATTORNEY CHARGES THAT:

### Count One
*(Conspiracy to Commit Theft of Government Funds)*

1. Beginning on a date unknown, but at least from in or about December 2018, until at least on or about February 3, 2023, in the Northern District of Georgia, the defendant, TRACY DENISE JONES, knowingly and willfully combined, conspired, confederated, agreed, and had a tacit understanding with M.D. and other persons known and unknown to commit an offense against the United States; to wit, to commit Theft of Government Funds, that is, to knowingly and willfully embezzle, steal, purloin, and convert to her own use and the use of another, money of the United States having a value exceeding the sum of $1,000, namely, funds provided by the U.S. Department of Housing and Urban Development in the form of housing assistance payments, which funds JONES was not entitled to receive, in violation of Title 18, United States Code, Section 641.

.     .

## Background

2. At all times relevant to this Information:

3. Since on or about April 3, 2017, JONES has served as Senior Vice President over the Housing Choice Voucher Program at the Housing Authority of the City of Atlanta, Georgia ("Atlanta Housing" or "AH").

4. AH is the largest housing authority in Georgia and one of the largest in the nation, providing housing resources for nearly 27,000 low-income households comprised of approximately 43,000 individuals within the City of Atlanta. Among other assistance programs, AH administers a Housing Choice Voucher Program, also known as "Section 8," that provides rental subsidy payments to landlords who rent properties in Atlanta, Georgia to low-income individuals. AH programs are funded by the U.S. Department of Housing and Urban Development ("HUD"). AH has rules restricting AH staff from personally profiting from the Section 8 program or receiving Section 8 payments for their own properties. Additionally, Section 8 landlords are typically prohibited from leasing to their own family members. Section 8 funds are limited, and there is often a long waiting list of low-income families and individuals who are hoping to be accepted into the program to have access to rental assistance.

5. The Georgia Department of Community Affairs ("DCA") also administers a Section 8 Housing Choice Voucher Program. DCA administers the program in 149 of Georgia's 159 counties, but not in the area serviced by AH. DCA's

program is also funded by HUD. DCA received more than $10,000 of federal funding in each of years 2018 to 2023.

6. M.D. is an individual who has two children with JONES' son. As early as November 2017 and through at least February 2023, M.D. and JONES' two grandchildren lived at a rental residence in Fayetteville, Georgia owned by JONES (the "Fayetteville house"). At times, JONES' son also lived with M.D. and the two children. The Fayetteville house is within the territory covered by DCA.

7. JONES lived and maintained her primary residence in a separate house in Atlanta, Georgia.

**Manner and Means**

8. The manner and means by which the conspiracy to commit theft of government funds was sought to be accomplished included the following:

9. JONES and M.D. participated in a multi-step scheme in which they submitted falsified forms to AH and DCA so that JONES would receive Section 8 payments for the Fayetteville house while M.D. and JONES's grandchildren lived there.

10. First, beginning in 2018, the conspirators presented false documentation to gain M.D.'s acceptance into the AH Section 8 program, representing that M.D. was a resident of Atlanta even though M.D. actually resided in the Fayetteville residence and therefore was not eligible for AH programs. As a result of the false documents, M.D. was accepted into the AH program on about February 15, 2019.

11. Second, because AH could not issue Section 8 payments for housing in Fayetteville, on March 15, 2019, the conspirators presented false documentation to AH in which M.D. claimed to be a victim of domestic violence and needed to relocate to another area for the safety of herself and her children. As a result, M.D.'s Section 8 eligibility was transferred to DCA.

12. Third, from July to October 2019, JONES and M.D. applied to have DCA approve a lease for M.D. to live in the Fayetteville house and for DCA to issue Section 8 payments of $705 per month to JONES. To disguise JONES' identity as the true owner of the house, she temporarily transferred the property to a business entity she had set up, New Beginning Restoration Project, Inc. a/k/a New Beginnings Restoration Project Inc. ("NBRP"), and used the fake name Tracy P. Collins as the purported owner of NBRP. JONES also repeatedly falsely certified that "[t]he owner (including a principal or other interested party) is not the . . . grandparent . . . of any member of the assisted family" even though JONES was the grandparent of M.D.'s two children who resided with M.D. in the house.

13. As a result of the fraudulent scheme, JONES collected approximately $36,387 of housing assistance payments from November 12, 2019, to February 3, 2023, which were deposited into an NBRP bank account controlled by JONES.

14. Fourth, to cover up the fraud, JONES submitted an affidavit to an AH internal investigation in which she falsely claimed that she did not own or control the Fayetteville house or NBRP from 2018-2022. JONES also caused at

least one other individual to provide false documents and statements to the AH internal investigation and in response to a federal grand jury subpoena.

## Overt Acts

15. In furtherance of the conspiracy to commit federal program theft, JONES, M.D., and others committed at least the following overt acts in the Northern District of Georgia.

16. On or about December 18, 2018, in the course of applying for the AH housing assistance program, M.D. submitted a letter to AH stating that she was an Atlanta resident and attached a Lease Agreement purporting to show that she was a tenant and resident of an apartment in Atlanta, Georgia. That lease was fraudulent and M.D. never lived at that location. In reality, M.D. lived at the Fayetteville house. As a result, on February 15, 2019, M.D. was accepted into the AH housing assistance program.

17. On or about March 15, 2019, JONES and M.D. submitted to AH a domestic violence form in which M.D. falsely claimed that she lived in Atlanta, falsely claimed she was being abused by a boyfriend, and stated, "I, [M.D.] am currently in an abuse situation. There is physical and verbal abuse against myself and my children. I want to relocate to another area for the safety of myself and my children." As a result of the false statements on the form, M.D. was allowed to transfer her housing assistance benefits out of Atlanta.

18. On or about July 23, 2019, JONES signed a Housing Choice Voucher Landlord Certification of Responsibility agreement, using the fake name Tracy P.

Collins, stating that Collins was the owner of the Fayetteville house and NBRP. The agreement included a statement that "[t]he owner (including a principal or other interested party) is not the . . . grandparent . . . of any member of the assisted family" even though JONES was the grandparent of M.D.'s two children who resided with M.D. in the house.

19. On or about July 24, 2019, JONES submitted to DCA a Form W-9 Request for Taxpayer Identification Number and Certification, on behalf of NBRP, signing the fake name Tracy P. Collins.

20. On or about July 24, 2019, JONES and M.D. signed and submitted to DCA a Request for Tenancy Approval. JONES signed the form using the fake name Tracy P. Collins as Owner/Owner representative of the property and NBRP. The form included an Owner Certification stating, "The owner (including a principal or other interested party) is not the . . . grandparent . . . of any member of the family," even though JONES was the grandparent of M.D.'s two children who resided with M.D. in the house

21. On or about July 27, 2019, JONES submitted to DCA a form directing DCA to deposit rental assistance payments into an NBRP bank account controlled by her.

22. On or about July 29, 2019, JONES submitted a letter to DCA, signing the fake name T.P. Collins, falsely stating that Collins was the "new owner of the home in which [M.D.] resides."

23. On or about October 3, 2019, JONES and M.D. signed and submitted to DCA a Lease for Residential Property that listed NBRP as landlord of the Fayetteville house and M.D. as the tenant. JONES signed as landlord using the fake name Tracy D. Collins.

24. On or about October 25, 2019, JONES signed and submitted to DCA a HUD Housing Assistance Payments Contract, as property owner, using the fake name Tracy Collins, requesting housing assistance payments of $705 per month, with M.D. as the tenant. The contract included an Owner Certification stating, "The owner (including a principal or other interested party) is not the . . . grandparent . . . of any member of the family," even though JONES was the grandparent of M.D.'s two children who resided with M.D. in the house

25. On or about April 25, 2023, JONES signed and notarized an affidavit and submitted it to attorneys conducting an internal investigation for AH, falsely stating, among other things, "I did not own or control the [Fayetteville] residence during any time that [M.D.] and her children occupied the residence pursuant to a HAP voucher. I had previously deeded the property to New Beginnings Restoration Project, Inc. and in May of 2018 the corporation assigned and ceded control of New Beginnings to [C.T.]. I did not and have not received any HAP funds or benefits either directly or indirectly at any time."

All in violation of Title 18, United States Code, Section 371.

## Count Two
*(Wire Fraud)*

26. The factual allegation of paragraph 2 through 25 of this Information are realleged and incorporated as if fully set forth herein.

27. Beginning on or about April 1, 2020, until on or about May 31, 2021, in the Northern District of Georgia, the defendant, TRACY DENISE JONES, aided by others known and unknown, knowingly devised and intended to devise a scheme and artifice to defraud the Small Business Administration and a lender operating under the Paycheck Protection Program, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and by omission of material facts, and, with intent to defraud, caused to be transmitted by means of a wire communication in interstate and foreign commerce certain writings, signs, signals, and sounds, namely, loan applications and related documents containing false information.

## The Small Business Administration

28. The United States Small Business Administration ("SBA") is an executive branch agency of the United States government that provides support to entrepreneurs and small businesses. The mission of the SBA is to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.

29. As part of this effort, the SBA enables and provides for loans through banks, credit unions, and other lenders. These loans have government-backed guarantees.

### The Paycheck Protection Program

30. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or about March 2020 and was designed to provide emergency financial assistance to the millions of Americans who were suffering from the economic effects caused by the COVID-19 pandemic.

31. One source of relief that the CARES Act provided for was the authorization of up to $349 billion in forgivable loans to small businesses for payroll, mortgage interest, rent/lease, and utilities, through a program referred to as the Paycheck Protection Program ("PPP"). In April 2020, Congress authorized up to $310 billion in additional PPP funding.

32. The PPP allowed qualifying small businesses and other organizations to receive PPP loans. Businesses must use PPP loan proceeds for payroll costs, interest on mortgages, rent, and utilities. The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the business spent the loan proceeds on these expense items within a designated period of time and used a certain percentage of the PPP loan proceeds for payroll expenses.

33. The amount of a PPP loan that a small business may have been entitled to receive was determined by the number of employees employed by the business and the business's average monthly payroll costs.

9

34. In order to obtain a PPP loan, a qualifying business was required to submit a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. In the PPP loan application, the small business (through its authorized representative) had to state, among other things, its (a) average monthly payroll expenses and (b) number of employees. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP. In addition, businesses applying for a PPP loan had to provide documentation showing their payroll expenses.

35. The SBA oversaw the PPP. However, individual PPP loans were issued by private, approved lenders who received and processed PPP applications and supporting documentation, and then made loans using the lenders' own funds, which were 100% guaranteed by the SBA. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

36. Cross River Bank, an FDIC-insured bank headquartered in Fort Lee, New Jersey, was one lender that processed and made PPP loans.

. .

## The EIDL Program

37. The Economic Injury Disaster Loan ("EIDL") program was an SBA program that provided low-interest financing to small businesses, renters, and homeowners in regions affected by declared disasters.

38. Another source of relief provided by the CARES Act was the authorization for the SBA to provide EIDLs of up to $2 million to eligible small businesses experiencing substantial financial disruption due to the COVID-19 pandemic. In addition, the CARES Act authorized the SBA to issue advances of up to $10,000 to small businesses within three days of applying for an EIDL. The amount of the advance was determined by the number of employees the applicant certified having as employees. The EIDL advances did not have to be repaid.

39. To obtain an EIDL or an EIDL advance for COVID-19 relief, a qualifying business was required to submit an application to the SBA and provide information about its operations, such as the number of employees and gross revenues and cost of goods sold for the 12-month period preceding January 31, 2020. The applicant was also required to certify that all the information in the application was true and correct to the best of the applicant's knowledge.

40. EIDL applications were submitted directly to the SBA and processed by the agency with support from a government contractor. The amount of the loan, if the application was approved, was determined based, in part, on the information provided by the applicant about employment, revenue, and cost of goods sold, as described above. Any funds issued under an EIDL or EIDL

11

advance were issued directly by the SBA through the United States Treasury. EIDL funds were required to be used for certain purposes, such as working capital to make regular payments for operating expenses, which included payroll, rent/mortgage, utilities, and other ordinary business expenses, and to pay business debt incurred at any time (past, present, or future). If the applicant also obtained a loan under the PPP, the EIDL funds could not be used for the same purpose as the PPP funds.

41. EIDL applications were received in and processed using computer servers located in the states of Iowa, Virginia, and Washington. EIDL disbursement payments were initiated by the SBA using computer servers located in the state of Colorado, which transmitted the payment information to the Treasury using computer servers located in the state of Virginia.

42. As part of the scheme, beginning on or about April 1, 2020, defendant JONES applied for a series of four sets of pandemic relief funds in the names of two business entities controlled by her.

43. Application #1: On or about April 1, 2020, JONES submitted to the SBA, via the internet, an application for an EIDL Advance and Loan in the name of New Beginning Restoration Project Inc. In that application, JONES stated that she was CEO and 100% owner of NBRP, had three employees, and received $56,000 of gross revenues in 2019. In reality, NBRP was not conducting business operations, had no employees, and had no sales in 2019. Additionally, JONES' statements that she was the sole owner of NBRP conflicted with her other

12

statements described above in Count One, specifically, her multiple statements to DCA that NBRP was owned by "Tracy Collins," and her April 25, 2023, affidavit stating that NBRP was controlled by C.T. starting in 2018. As a result of this fraudulent application, on June 10, 2020, JONES received a deposit of $13,000 of EIDL funds into an NBRP bank account controlled by her and on June 18, 2020, she received a deposit of $3,000 of EIDL Advance funds into that same bank account. The NBRP bank account that received the funds is the same account that received the housing assistance payments described in Count One.

44. Application #2: On or about May 21, 2020, JONES submitted to Cross River Bank, via the internet, an application for a PPP loan for $11,162 in the name of New Beginnings Restoration Project Inc. In that application, JONES stated that she was 100% owner of NBRP, had five employees, and paid an average monthly payroll of $4,464.80. In support of the application, JONES also submitted a purported IRS Schedule C for Profit of Loss From Business stating that NBRP had gross sales of $56,480 in 2019. In reality, NBRP was not conducting business operations, had no employees, and had no sales in 2019, and the Schedule C had not been filed with the IRS. Additionally, JONES' statements that she was the sole owner of NBRP conflicted with her other statements described above in Count One, specifically, her multiple statements to DCA that NBRP was owned by "Tracy Collins," and her April 25, 2023, affidavit stating that NBRP was controlled by C.T. starting in 2018. As a result of this fraudulent application, on May 26, 2020, JONES received a deposit of $11,162 into an NBRP bank account

13

controlled by her. The NBRP bank account that received the funds is the same account that received the housing assistance payments described in Count One.

45. Application #3: On or about July 26, 2020, JONES submitted to the SBA, via the internet, an application for an EIDL Advance and Loan in the name of C&T Management and Consulting ("C&T"). In that application, JONES stated that she was 100% owner of C&T, had four employees, and received $78,000 of gross revenues in 2019. In reality, JONES reported to the IRS in a Schedule C to her personal tax return that C&T had only $12,000 of gross receipts (and reported a net loss of $14,307 for the business, which offset personal income taxes she owed). SBA ultimately denied her application.

46. Application #4: On or about April 19, 2021, JONES submitted to the SBA, via the internet, an application for an EIDL Targeted Advance in the name of New Beginning Restoration Project Inc. In that application, JONES falsely stated that she had six employees and submitted a purported IRS Schedule C stating that NBRP had gross sales of $74,269 in 2020. In reality, NBRP at that time was not conducting business operations, had no employees, and had no sales in 2020, and the Schedule C had not been filed with the IRS.

47. On or about May 5, 2021, SBA declined JONES' EIDL Targeted Advance application. In response, on or about May 31, 2021, JONES wrote to the SBA to appeal the denial, stating, among other things:

· "I currently reside[]" and "I have lived at" an address in Atlanta since August 2019;

· "I rent the [Fayetteville] home;"

.      .

· "I am truly a honest business owners;"

· "I hear the stories how people abused the PPP loans to establish a lavish lif[e] style. That is not me. My business is small and is growing, but I [am] one of the legitimate and honest business that can use all the help I can;" and

· "I also serve a community of low income families in my business, renting one of my three homes to a low income family as well as serve other owners of low income rental properties."

48. SBA did not ultimately approve her request for the EIDL Targeted Advance.

## Execution of the Scheme

49. To execute this scheme to defraud, JONES caused the transmission of interstate wire communications. Among other executions of the scheme, on or about April 19, 2021, in the Northern District of Georgia, JONES, aided and abetted by others known and unknown, for the purpose of executing and attempting to execute the scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and by omission of material facts, did, with intent to defraud, cause to be transmitted by means of a wire communication in interstate and foreign commerce certain writings, signs, signals, and sounds, namely, a fraudulent application for an EIDL Targeted Advance in the name of New Beginning Restoration Project Inc.

All in violation of Title 18, United States Code, Sections 1343 and 2.

## Count Three
*(Credit Application Fraud)*

50. The factual allegations of paragraph 2 through 25 of this Information are realleged and incorporated as if fully set forth herein.

51. On or about June 8, 2022, in the Northern District of Georgia, the defendant, TRACY DENISE JONES, aided by others known and unknown, knowingly made false statements and reports, and willfully overvalued property, in an application, advance, commitment, and loan, and any change and extension thereof, for the purpose of influencing the actions of the Federal Housing Administration, a mortgage lending business, and a person and entity that makes in whole and in part a federally related mortgage loan; to wit, JONES made false statements in a Uniform Residential Loan Application to American Financing Corporation to obtain a mortgage insured by the Federal Housing Administration.

52. Specifically, on or about June 8, 2022, JONES refinanced her existing mortgage on the Fayetteville house with a remaining balance of $134,430.92 to obtain a new Federal Housing Administration-insured mortgage of $291,780. In the Uniform Residential Loan Application, JONES made the following false entries:

· "Intended Occupancy: Primary Residence"

· "Occupancy: Primary Residence"

· "Will you occupy the property as your primary residence? YES"

· "[H]ave you had an ownership interest in another property in the last three years? NO"

16

. "The information I have provided in this application is true, accurate, and complete as of the date I signed this application."

. "Any intentional or negligent misrepresentation of information may result in the imposition of . . . criminal penalties on me including, but not limited to, fine or imprisonment or both under the provisions of Federal law."

53. When JONES made the above false entries on the mortgage application, she knew that she was not personally occupying the Fayetteville house; that she maintained her actual primary residence at a separate house in Atlanta; that she was actively renting the Fayetteville house to M.D.; that JONES was receiving DCA Section 8 housing assistance payments for M.D. living in the Fayetteville house; that JONES had no intention of occupying the Fayetteville house as her primary residence; and that JONES had an ownership interest in other properties, including her actual primary residence in Atlanta.

54. As a result of the false application, the mortgage was approved and issued.

All in violation of Title 18, United States Code, Sections 1014 and 2.

## Forfeiture

55. Upon conviction of the offense alleged in Count One of this Indictment, the defendant, TRACY DENISE JONES, shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the violation, including, but not limited to, the following:

MONEY JUDGMENT: A sum of money in United States currency, representing the amount of proceeds obtained as a result of the offense alleged in Count One of this Indictment.

56. Upon conviction of one or more of the offenses alleged in Counts Two through Three of this Indictment, the defendant, TRACY DENISE JONES, shall forfeit to the United States of America, pursuant to pursuant to Title 18, United States Code, Section 982(a)(2)(A), any property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of the violations, including, but not limited to, the following:

MONEY JUDGMENT: A sum of money in United States currency, representing the amount of proceeds obtained as a result of the offense alleged in Counts Two through Three of this Indictment.

57. If, as a result of any act or omission of the defendant, any property subject to forfeiture,

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third party;

(c) has been placed beyond the jurisdiction of the court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be divided without difficulty,

the United States intends, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c) and Title

.        .

18, United States Code, Section 982(b)(1), to seek forfeiture of any other property

of the defendant up to the value of the forfeitable property.

THEODORE S. HERTZBERG
  *United States Attorney*

GARRETT L. BRADFORD
  *Assistant United States Attorney*
Georgia Bar No. 074374

600 U.S. Courthouse
75 Ted Turner Drive SW
Atlanta, GA 30303
404-581-6000; Fax: 404-581-6181